IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TERESA L. TAYLOR,                    )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )        CIVIL ACTION NO. 2:11CV84-SRW
                                     )                  (WO)
MICHAEL J. ASTRUE, Commissioner      )
of Social Security,                  )
                                     )
        Defendant.                   )

## MEMORANDUM OF OPINION

Plaintiff Teresa L. Taylor brings this action pursuant to 42 U.S.C. § 405(g) and

§ 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security

("Commissioner") denying her applications for disability insurance benefits and

supplemental security income under the Social Security Act.  The parties have consented to

entry of final judgment by the Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Docs. ## 8,

9). Upon review of the record and briefs submitted by the parties, the court concludes that

the decision of the Commissioner is due to be affirmed.

## BACKGROUND

Plaintiff finished high school in 1988 and completed training to become a certified

nursing assistant (CNA) in 1993.  (R. 162).  She filed the present Title II and Title XVI

applications on February 13, 2007, when she was thirty-seven years of age, alleging that she

became unable to work three and a half months earlier, on October 31, 2006, due to

fibromyalgia, depression, and mild hearing loss. (R. 157, 180; <u>see also</u> Exhibits 1D, 2D (R. 129-44)). Plaintiff alleged, "I have a problem with my balance. I stay depress[ed]. I stay on the inside. I don't like being around people. I have a mild hearing los[s]." (R. 157). She reported past work as a certified nursing assistant between 1992 and 2004, for two months in 2006 and for three months in 2005. She also worked as a secretary for a property rental business from April 2005 through February 2006, as a "twister operator" at Shaw Industries from March 2006 through October 2006, and as a part-time babysitter for four months in 2005. (R. 158, 164, 185). She indicated that Dr. Lori Stanfield had treated her since 2000 for all of her medical problems, that she saw Dr. McQueen on one occasion for hearing tests a week before she filed her applications for disability, and that she began seeing Dr. Soh for treatment of fibromyalgia and Tommy Smith of Pathways Professional Counseling for depression several weeks earlier, in December 2006. (R. 159-60).

In a pain questionnaire she completed on April 4, 2007, plaintiff reported that Dr. Stanfield prescribed Darvocet two days earlier for plaintiff's pain, which she experiences "all over, [but] worse in [her] legs and back" on a daily basis. She reported that the Darvocet relieves her pain for several hours but causes side effects of nausea and vomiting, for which Dr. Stanfield  prescribed Phenergan. She stated, "I don't go anywhere unless I have to, I can't be around a group of people because I get aggravated when I can[']t understand what is being said" and described her daily activities as "shopping when I don[']t have help, drive to my local doctor + counselor, walk next door to my dad's." (R. 183-84). She indicated that

she shops twice a week when she does not have help, but that she needs help lifting bags and, sometimes, pushing the buggy.  She "picks up" a little, but her teen-aged children and her father perform most household chores. She sits in a recliner with her legs elevated and watches television; she likes to read books but does so only every two weeks because her fibromyalgia medication causes blurry vision.  She does not leave home unless her children have an activity or she has a medical appointment. She drives when she does not have someone else to drive for her. She reported that she has no social activities, other than visiting with family members once a week and conversing with them on the telephone. Plaintiff indicated that she is unable to concentrate and does not remember things easily. (R. 194-98; see also R. 35).

Plaintiff's claims were denied initially on June 8, 2007. (R. 57-70).  She requested a hearing before an administrative law judge (R. 74), which was held on January 21, 2009 (R. 30-56). As to her functional capabilities, plaintiff testified that she can walk about five minutes, stand for fifteen to twenty minutes, and sit for twenty to thirty minutes before she must recline due to her legs swelling and pain in her legs and lower back.  She has difficulty using her fingers to manipulate small things. She talks to her friend on the phone almost daily, and she "pretty much get[s] along with people." (R. 43-44).

The ALJ issued her decision on March 27, 2009. She concluded that plaintiff has severe impairments of fibromyalgia, affective depressive disorder, lumbar degenerative disk disease, hearing loss, and insomnia with restless leg syndrome, but that she does not have an impairment or combination of impairments that meets or equals an impairment in the

Commissioner's listings. (R. 17-18). She found that plaintiff retains the residual functional capacity for light work, with restrictions from detailed or complex instructions, constant contact with the public, unprotected heights, dangerous moving equipment and environments with loud background noises. (R. 19). The ALJ concluded that, while plaintiff cannot perform her past relevant work, she retains the residual functional capacity to perform other jobs that exist in significant numbers in the national economy, including electrical assembler, garment folder, and mail clerk. (R. 28). Accordingly, she found that plaintiff had not been under a disability, as defined by the Social Security Act, between October 31, 2006 and the date of the ALJ's decision. (R. 29). On December 10, 2010, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (R. 1-5).

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985

F.2d at 531.  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed.  Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

### Treating Physician's Opinion

Plaintiff argues that the ALJ committed reversible error by failing to give any weight to the opinions expressed by her treating physician, Dr. Lori Stanfield, in letters dated November 29, 2006; February 13, 2007; and June 14, 2007.  (See Plaintiff's brief, Doc. # 12, pp. 7-13).  In the November 29, 2006 letter, Dr. Stanfield stated, "Ms. Taylor suffers from fibromyalgia and Major Depressive Disorder and is currently under my care for treatment. She is not able to work at this time." (R. 295).  In mid-February 2007, Dr. Stanfield wrote, "Ms. Teresa Taylor is currently unable to work due to Fibromyalgia Syndrome and Depression." (R. 293).[1]  On June 14, 2007, Dr. Stanfield wrote, "Ms. Teresa Taylor is currently unable to work due to Fibromyalgia Syndrome and Depression.  She is unable to do any lifting, operating heavy machinery or driving." (R. 292).[2]  Six days later, on June 20,

---

[1]  Tommy W. Smith, a "Licensed Marriage and Family Therapist," saw plaintiff for therapy on 12/18/06, 1/22/07, and 2/19/07.  In a summary he provided to DDS on March 5, 2007, Smith concluded, "Teresa has fibromyalgia and major depressive disorder and is currently under the care of Dr. Lori L. Stanfield, M.D. Teresa's ability to function at home is severely limited by the fibromyalgia and major depression.  Overly high stress is felt because of teen age children where conflict is often experienced by a single mom. Teresa feels like she is a burden on her family of origin because they are paying her bills.  It is my impression that Teresa is unable to work at a day to day job because of her condition."  (R. 255-56).

[2]  The letters included no information or statement from Dr. Stanfield, other than that set forth above, except for plaintiff's date of birth and Dr. Stanfield's return address. Except for the November 2006 letter, which is not addressed to anyone, Dr. Stanfield's letters are addressed, "TO WHOM IT MAY CONCERN[.]" (R. 287, 292, 293, 295).

2007, Dr. Stanfield wrote: "Pt is not allowed to drive due to medications she has to take and current mental status."  (R. 287).  On June 29, 2007, a staff member signed a statement for Dr. Stanfield on Dr. Stanfield's letterhead[3] stating that Taylor "MAY RETURN TO WORK / SCHOOL : 060606"[4] but that she "CANNOT RETURN TO DRIVING AT THIS TIME[.]" (R. 286).

The ALJ discussed plaintiff's treatment history and described the content of Dr. Stanfield's letters. (R. 22-26). The ALJ reasoned:

> Progress notes from Dr. Lori Stanfield do not contain diagnostic testing or clinical findings to support her statements regarding the claimant's functional capacity for performing work activity. Other than in those statements, Dr. Stanfield's records are absent specific restrictions or limitations placed on the claimant's activities.  For example, the most recent and last progress note of record is dated February 20, 2008 (Exhibit 11F) and is typical of Dr. Stanfield's treatment notes.  These February 2008 notes reflect the claimant's **present illness** as complaints of daytime somnolence with chronic insomnia, **which originally began over a month ago, i.e. January 2008**.  Severity was described as **improving**.  (Emphasis mine)[.]  Previous treatments were noted as Provigil, "working on" sleep hygiene, "more awake during day," Klonopin and Lyrica only at night, and making efforts to be more active during day.  The claimant's past history consisted of chronic illnesses: anxiety, fibromyalgia, muscles very sore, back worse, spasms in arms.  Flexeril was noted as having helped in the past. A physical examination was conducted and other than "multiple trigger points still noted," was essentially unremarkable.  Dr. Stanfield's records contain no noted observations regarding the claimant's ability to move about the exam room, her demeanor, facial expressions, or other such clinical findings. While Dr. Stanfield did refer the claimant to rheumatologist, Dr. Soh for evaluation of fibromyalgia, there is no indication

---

[3] The statement is signed above the designation "Physician Signature" as "Dr. LLS" and "Johnson," with illegible initials. (R. 286).

[4] There is no indication of what "060606" means.  Since the note is dated "06/29/2007," and since all of Dr. Stanfield's records use the "MM/DD/YYYY" date format, it does not appear to designate the date of June 6, 2006.

that the claimant required and/or received more than very conservative and minimal medical treatment. The claimant was noted at one time to request that, because of her financial situation, testing be held to a minimum.[5]  But at the same time, I note that the medical records and physician's reports do not indicate any need for aggressive medical testing or management[.]  See Exhibits 3F, 9F, 11F.

Therefore, no weight is given to the statements by Dr. Lori L. Stanfield identified as Exhibit 9F pages 1, 2, 7, 9, and 10 because they are not accompanied by medically acceptable diagnostic techniques or clinical findings. The statements are inconsistent with Dr. Stanfield's own minimal treatment for the claimant and, frankly, are not consistent with the nature of the claimant's conditions. Moreover the statements are inconsistent with the findings of other medical sources of record.

(R. 26).[6]  The ALJ further cited the August 2008 treatment notes of Dr. J. W. Johnson, noting

that plaintiff had not received medical care for several months, that her physical examination

was unremarkable, that she was not taking any prescribed medications at that time and had

---

[5]  Plaintiff made this request in March 2004.  (R. 242-43).

[6]  Plaintiff complained of shoulder pain that had lasted for three days in a visit to Dr. Stanfield in May 2006.  (R. 233-34).  She did not return to Dr. Stanfield for treatment for nearly six months.  (See Exhibit 3F).  Dr. Stanfield first assessed fibromyalgia on November 7, 2006; she also diagnosed insomnia and depression.  (R. 231-32).  One week later, plaintiff reported that "upper body myalgias better with treatment but still some pain in legs" and depressed mood and insomnia.  (R. 229).  On November 29, 2006, plaintiff's depressive symptoms were improving, but she still had leg pain and fatigue, and had to move her legs at night.  Dr. Stanfield referred plaintiff to a rheumatologist.  (R. 227).  The rheumatologist, Dr. Soh, assessed fibromyalgia syndrome and restless leg syndrome; Dr. Soh adjusted plaintiff's medication and advised her to "increase daily structured exercise program."  (Exhibit 1F, R. 212-17).  Plaintiff returned to Dr. Stanfield for follow-up on her fibromyalgia on January 8, 2007 and February 12, 2007 (R. 223-26) and, on February 26, 2007, for treatment of a sore throat (R. 221-22).  Although the record includes prescriptions Dr. Stanfield wrote in June 2007, and MRI and x-ray results performed in June 2007 were sent to Dr. Stanfield (see Exhibit 9F, R. 286-95), there are no treatment notes from Dr. Stanfield for the period between February 26, 2007 and the February 20, 2008 visit described by the ALJ.  Plaintiff next sought medical treatment in August 2008 from Dr. Johnson  (See Exhibits 3F, 9F, 10F, 11F; see also R. 33 (plaintiff's attorney describing Exhibit 11F to the ALJ as including the "updated records through the last time she saw Dr. Stanfield")).  Dr. Johnson offered no opinion regarding plaintiff's functional capacity and has not indicated to the plaintiff that she is unable to work.  (Exhibit 10F; R. 48-49).  The administrative transcript includes no record of medical treatment after August 15, 2008.

a main complaint of a lingering cough; she further noted his observations on follow-up that plaintiff reported that she had stopped taking the prescribed Neurontin but that her prescribed Pamelor was helping, and that she was sleeping better and was able to function better. (R. 26-27).  The ALJ noted that there are no records to indicate that plaintiff sought treatment from Dr. Johnson after August 2008.  (R. 27; see Exhibit 10F, R. 296-97).  The ALJ further observed that "[t]he record is absent evidence that the claimant has failed to achieve improvement in symptoms through conservative modalities such as: 1) behavior modification, including relaxation training, electromyographic (EMG) biofeedback, and/or meditation; 2) tricyclic antidepressant medications; and 3) exercise, including water exercise classes, walking, riding stationary bicycles, low-impact aerobics, and/or muscle stretching/endurance."  (R. 27).

"If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight." Roth v. Astrue, 249 Fed. Appx. 167, 168 (11th Cir. 2007)(unpublished opinion)(citing 20 C.F.R. § 404.1527(d)(2)).  "If the treating physician's opinion is not entitled to controlling weight, . . . 'the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.'" Id. (citing Crawford v. Commissioner, 363 F.3d 1155, 1159 (11th Cir. 2004)).  "If the ALJ finds such good cause and disregards or accords less weight to the opinion of a treating physician, he must clearly articulate his reasoning, and the failure to do so is reversible

error." Pritchett v. Commissioner, Social Security Admin, 315 Fed. Appx. 806 (11th Cir. 2009)(unpublished opinion)(citing MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986)). "When the ALJ articulates specific reasons for not giving the treating physician's opinion controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. Schuhardt v. Astrue, 303 Fed. Appx. 757, 759 (11th Cir. 2008)(unpublished opinion)(citing Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005)).

Plaintiff argues that fibromyalgia is diagnosed on the basis of the patient's complaints and the presence of trigger points, not with objective tests. (Doc. # 12, pp. 10-11). However, although the ALJ noted the absence of diagnostic testing to rule out other potential impairments (see R. 27), the ALJ did not reject Dr. Stanfield's diagnosis of fibromyalgia; indeed, fibromyalgia is the first severe impairment identified by the ALJ in her step two finding. (See R. 17). The fact that plaintiff suffers from symptoms resulting from fibromyalgia does not mandate a conclusion that those symptoms are disabling. As the Commissioner argues and the ALJ reasoned, Dr. Stanfield's opinion in November 2006 that plaintiff was "not able to work at this time" (R. 295) and her statements in February and June 2007 that plaintiff "is currently unable to work" (R. 292, 293) are not medical opinions entitled to deference, as the issue of disability is reserved to the Commissioner. (See ALJ decision at R. 23 ("Statements that a claimant can or cannot work or is or is not disabled[,] however, are not medical opinions, but issues reserved to the Commissioner."); 20 C.F.R. § 404.1527(e)(1)("Medical source opinions on issues reserved to the Commissioner," such

9

as opinions that a claimant is "disabled" or "unable to work," are not "medical opinions" under the Commissioner's regulations); § 404.1527(e)(3)("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . .").[7]

In the letters plaintiff cites as setting forth Dr. Stanfield's opinion (see Doc. # 12, pp. 7-8), Dr. Stanfield includes plaintiff's diagnoses of fibromyalgia syndrome and depression, but she offers little in the way of an opinion regarding plaintiff's specific functional limitations.[8]  The most restrictive functional limitations are included in the June 14, 2007, letter, in which Dr. Stanfield – without any explanation other than the diagnoses – states that plaintiff "is unable to do any lifting, operating heavy machinery or driving."  (R. 292). Although there are no treatment notes from Dr. Stanfield for this time frame, the report for an MRI performed on June 18, 2007 – four days after Dr. Stanfield's letter – indicates that plaintiff suffered a fall in May 2007. (R. 289)(MRI "[f]or right leg radiculopathy.  Patient fell a month prior.").[9]  The MRI report, indicating "minimal disc bulges which just abut exiting nerve roots," was faxed to Dr. M. Stanfield on June 19, 2007.  (Id.).[10]  In the letter Dr. Lori Stanfield signed the following day, on June 20, 2007, the only functional restriction she

---

[7]   The same is true of the opinion rendered in March 2007 by Tommy Smith, plaintiff's psychotherapist, that plaintiff was "unable to work at a day to day job[.]" (R. 256).

[8]   After summarizing Dr. Stanfield's November 2006 letter, the ALJ states, "Unfortunately, Dr. L. Stanfield failed to describe how these conditions [fibromyalgia and major depressive disorder] affected the claimant's functional capacity."  (R. 22).

[9]   At the hearing, plaintiff testified, "I was told by the doctor last year when – after I fell not to lift anything over 15 pounds."  (R. 40-41).

[10]   Dr. Lori Stanfield's letterhead indicates that she practices with Dr. J. Michael Stanfield.  (See e.g., R. 294).

imposed was that plaintiff was "not allowed to drive due to medications she has to take and current mental status." (R. 287).  The ALJ discussed this evidence and sequence of events in evaluating the functional limitations imposed by Dr. Stanfield.  (See ALJ's discussion at R. 25).  The ALJ further observed that, except in the letters discussed above, "Dr. Stanfield's records are absent specific restrictions on limitations placed on the claimant's activities." (R. 26; see Exhibits 3F, 9F, 11F).  Additionally, the ALJ cited plaintiff's hearing testimony that she continues to drive. (R. 21; see R. 41-42 (plaintiff's statement, "I do drive during the day if I need to go somewhere.").  As noted above, the ALJ further observed that Dr. Stanfield's statements in the letters are inconsistent with Dr. Stanfield's minimal and conservative treatment of the claimant.  (R. 26; see n. 6, *supra*).

The Eleventh Circuit has found good cause for discounting a treating physician's report when the report "'is wholly conclusory.'"Crawford, 363 F.3d at 1159 (quoting Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir.1991)).  Additionally, there is good cause where the treating physicians' opinions are "inconsistent with their own medical records," Roth, 249 Fed. Appx. at 168 (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)).  The reasons articulated by the ALJ for declining to give weight to Dr. Stanfield's statements are both adequate and supported by substantial evidence.[11]

Residual Functional Capacity

---

[11]  Plaintiff does not identify the ALJ's treatment of Tommy Smith's opinion as a specific error in this appeal. (See Doc. # 12, p. 7). Plaintiff cites Smith's opinion as supportive of Dr. Stanfield's opinion that plaintiff is unable to work. (Doc. # 12, p. 12). However, as the ALJ noted, Smith also "provided broad and vague subjective symptom descriptions and no specific functional limitations resulting from the claimant's medically determinable impairment(s)." (R. 24; see R. 256).

Plaintiff next contends that the ALJ's RFC determination is not supported by substantial evidence because it is not supported by the residual functional capacity assessment of an acceptable source. (Doc. # 12, pp. 13-15).  Plaintiff points out that the only physical RFC of record is that of the "single decision maker" and argues – correctly and extensively –  that such an opinion is not entitled to any weight.  (Id., p. 14).  However, the ALJ does not refer to the SDM's RFC assessment at all in her decision. (R. 15-29). Plaintiff's real allegation of error is, instead, that "the ALJ erred in formulating her own RFC" without relying on a supporting RFC assessment by an examining or treating physician or other medical source.  (See id., pp. 14-15).  However, the Eleventh Circuit has rejected the contention that an ALJ's RFC assessment cannot be supported by substantial evidence in the absence of an RFC assessment from a medical source. See Green v. Social Security Administration, 223 Fed. Appx. 915 (11th Cir. 2007)(unpublished opinion).  In Green, the ALJ had discredited a treating source's opinion regarding the claimant's capabilities properly, and then – without a physical capacities evaluation from any other medical source – the ALJ determined the claimant's residual functional capacity on the basis of the other evidence of record, including the treatment notes; the Eleventh Circuit found the Commissioner's decision to be supported by substantial evidence. The Eleventh Circuit's analysis in Green (id. at 923-24), while not controlling, is persuasive.  In the present case, as in Green, the absence of an RFC assessment by a medical source does not deprive the ALJ's RFC finding of substantial evidentiary support.  (See ALJ's discussion of the evidence at R. 19-27).

## CONCLUSION

Upon its review of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and represents a proper application of the law. Accordingly, the decision is due to be AFFIRMED. A separate judgment will be entered.

DONE, this 31st day of May, 2012.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE